590 A.2d 1179

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. PETER A. DEMETER, DEFENDANT–RESPONDENT.

Argued November 5, 1990—Decided June 5, 1991.

*Stephanie P. Brubaker,* Assistant Prosecutor, argued the cause for appellant (*Richard C. Hare,* Warren County Prosecutor, attorney).

*Bruce A. Jones* argued the cause for respondent (*Harold J. Curry,* attorney).

*Tanya Y. Justice,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Robert J. Del Tufo,* Attorney General, attorney; *Debra G. Lynch,* Deputy Attorney General, of counsel and on the brief).

PER CURIAM.

This case presents another aspect of the search-and-seizure issue presented in *State v. Colvin*, 123 *N.J.* 428, 587 *A.*2d 1278 (1991). In that case the police had probable cause to believe that a vehicle parked on a street contained contraband in the form of drugs. We held that in the circumstances of that case (no advance planning for the search, combined with indications that the evidence might be lost or removed by confederates) the police could conduct a warrantless search of the car, and, under *United States v. Ross*, 456 *U.S.* 798, 102 *S.Ct.* 2157, 72 *L.Ed.*2d 572 (1982), of all the containers in the car that could contain the object of the search.

In this case the police lacked generalized probable cause to believe that a stopped car contained drugs but asserted that they had probable cause to believe that a specific container inside the car contained drugs. The police seized and opened the container without a warrant.

This scenario poses the problem highlighted in a case recently decided by the United States Supreme Court. *See California v. Acevedo*, —— *U.S.* ——, 111 *S.Ct.* 1982, 114 *L.Ed.*2d 619 (1991). Prior to *Acevedo*, probable cause to believe that a closed container in a vehicle contains contraband or evidence was not enough to permit a search of that container; a warrant was required. *Arkansas v. Sanders*, 442 *U.S.* 753, 99 *S.Ct.* 2586, 61 *L.Ed.*2d 235 (1979); *United States v. Chadwick*, 433 *U.S.* 1, 97 *S.Ct.* 2476, 53 *L.Ed.*2d 538 (1977). On the other hand, under the well-established "automobile exception" to the warrant requirement, probable cause to believe that a vehicle contained contraband or evidence was enough to permit a search of that vehicle, including any containers that could contain the object of the search. *United States v. Ross, supra*, 456 *U.S.* 798, 102 *S.Ct.* 2157, 72 *L.Ed.*2d 572. The implication of those cases was that if probable cause was directed to a specific container in a car, that container could not have been opened until a warrant is obtained; if, however, probable cause extended to the car in general, then any container inside could

have been searched without a warrant, as long as it could have contained the suspected evidence or contraband. In *Acevedo, supra,* the Court eliminated the warrant requirement for closed containers set forth in *Sanders.* —— *U.S.* ——, 111 *S.Ct.* 1982, 114 *L.Ed.*2d 619.

We need not debate the ruling of the Supreme Court for we are satisfied, as was the court below, that in the circumstances of this case, the police lacked probable cause to believe that either the car or the container held drugs.

## I

On March 1, 1987, a police officer on routine patrol in the Town of Belvidere observed a red van with a defective license-plate light being driven by defendant. The officer stopped the van and approached on the driver's side. While standing outside the van, the officer noticed a black opaque 35–millimeter film container lying on the storage area on the van's front console. Such containers are cylindrical in shape and about two inches in length. The officer did not see a camera in the van. He asked defendant to hand him the container. As defendant handed over the container, he stated that he used it to hold bridge tokens. The officer removed the film container's lid and detected an odor of marijuana and some residue inside the canister. The officer asked defendant to step out of the van and then conducted a further search of the vehicle, discovering another film container. He found narcotics inside that container.

Defendant was charged with criminal possession of the narcotics, contrary to *N.J.S.A.* 24:21–20a(1), repealed by *L.*1987, *c.* 106. *See N.J.S.A.* 2C:35–23 (continuing in effect prior law for violations committed before effective date of new chapter of Criminal Code). He moved to suppress the evidence before trial. Defendant argued that the search of the first film container was invalid because it was not based on probable cause. Therefore the narcotics discovered in the second film container would have to be suppressed. At the suppression

hearing, the arresting officer testified that in his seven years of experience as a police officer he had investigated at least forty narcotics incidents with "at least half of them" involving the use of 35–millimeter film containers to hold drugs. He admitted that he asked defendant to hand him the film container for no reason other than that his past experience showed that a high percentage of such film containers, when found without cameras, contained narcotics. The stop did not occur in a high-crime area nor did the police have any tips regarding suspected drug activity by defendant. Regarding defendant's claim of using the container to hold bridge tokens, the officer said that in his previous experience he had encountered three vehicles whose occupants used such containers for that purpose. The officer testified that he did not ask defendant whether he had a camera before he requested the film container. He also said that he could not detect an odor of marijuana until after he had opened the film container. The trial court denied the motion to suppress. It ruled that the officer had probable cause based on the lack of a camera near the canister; the experience of the officer in his prior stops; and the officer's training in drug paraphernalia courses. At trial, defendant was convicted of criminal possession of narcotics. He appealed the denial of his motion to suppress.

The Appellate Division reversed the trial court, holding that the police officer did not have probable cause to search the film container. 231 *N.J. Super*, 114, 555 *A*.2d 30 (1989). The court stated that the officer's "asserted 'belief' is mere conjecture or suspicion and at best a 'hunch.'" *Id.* at 119, 555 *A*.2d 30. One member of the panel dissented on the grounds that the officer had an objectively reasonable basis for suspicion as a result of his experience and training.

The State appeals to this Court as of right. *R.* 2:2–1(a)(2).

## II

The basic premise in any warrantless search-and-seizure case is that such a seizure is per se illegal unless it falls

within one of a very few specific and well-delineated exceptions. *Katz v. United States*, 389 *U.S.* 347, 88 *S.Ct.* 507, 19 *L.Ed.*2d 576 (1967). The State argues that two of those exceptions apply here. First, the State argues that the search was within the scope of the "automobile exception" to the warrant requirement established by the Supreme Court in *Carroll v. United States*, 267 *U.S.* 132, 45 *S.Ct.* 280, 69 *L.Ed.* 543 (1925). That exception recognizes that automobiles and other vehicles may be searched without a warrant in circumstances that might not justify the warrantless search of a house or an office, provided that there is probable cause to believe that the vehicle contains contraband or other evidence of criminal activity. *Carroll v. United States, supra*, 267 *U.S.* at 156, 45 *S.Ct.* at 286, 69 *L.Ed.* at 552. Second, the State argues that the search may be justified under the "plain view doctrine." *Texas v. Brown*, 460 *U.S.* 730, 103 *S.Ct.* 1535, 75 *L.Ed.*2d 502 (1983); *Coolidge v. New Hampshire*, 403 *U.S.* 443, 91 *S.Ct.* 2022, 29 *L.Ed.*2d 564 (1971). The Court clarified the elements of that doctrine in *Texas v. Brown* and *Arizona v. Hicks*, 480 *U.S.* 321, 107 *S.Ct.* 1149, 94 *L.Ed.*2d 347 (1987), to require that the police have probable cause to associate the observed item with criminal activity in order to seize it without a warrant. This Court adopted that requirement of the plain-view doctrine in *State v. Bruzzese*, 94 *N.J.* 210, 463 *A.*2d 320 (1983), *cert. denied*, 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984).

Whether viewed under the automobile exception or plain-view doctrine, therefore, the ultimate question in this case is the same: whether the police officer had probable cause to believe that the film canister contained narcotics when he viewed it in the front console of the van.

### III

██ Probable cause requires "a practical, common-sense decision whether, given all the circumstances * * * there is a

fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 *U.S.* 213, 238, 103 *S.Ct.* 2317, 2332, 76 *L.Ed.*2d 527, 548 (1983); *State v. Novembrino*, 105 *N.J.* 95, 117–18, 519 *A.*2d 820 (1987). Under the Constitution there is a preference for a magistrate to make the probable-cause determination. Thus, in a doubtful or marginal case a search with a warrant may be sustainable where a search without a warrant would fall. *United States v. Ventresca*, 380 *U.S.* 102, 106, 85 *S.Ct.* 741, 744, 13 *L.Ed.*2d 684, 687 (1965). In some cases, however, the police may be unable to obtain a warrant because of the exigencies of the situation. Such a warrantless search will not necessarily be invalid, but it must fit within one of the recognized exceptions and must still be based on probable cause. In evaluating a finding of probable cause, courts will give "careful scrutiny" to a police officer's suspicion that an individual or object was involved in criminal activity. *State v. Davis*, 104 *N.J.* 490, 505, 517 *A.*2d 859 (1986). We turn then to an examination of those circumstances in which a warrantless search or seizure of an object or container may be justified.

■ Some objects or containers, although by themselves not sufficiently probative of criminal activity, may by their configuration or design proclaim their contents to an observer. In *Arkansas v. Sanders, supra,* 442 *U.S.* at 764 n. 13, 99 *S.Ct.* at 2593 n. 13, 61 *L.Ed.*2d at 245 n. 13, the Supreme Court stated that "some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." Consistent with that observation, courts have upheld the warrantless opening of containers bearing labels identifying their contents, *United States v. Eschweiler*, 745 *F.*2d 435, 440 (7th Cir.1984) (envelope that bore description of items within "proclaims its contents on the outside [and] is not a private place"), *cert. denied*, 469 *U.S.* 1214, 105 *S.Ct.* 1188, 84 *L.Ed.*2d 334 (1985), and of containers that were transparent or partially open, *Tillman v. State*, 275 *Ark.*

275, 630 *S.W.*2d 5 (1982) (garment bag partially open, revealing stolen goods), *cert. denied,* 459 *U.S.* 1201, 103 *S.Ct.* 1185, 75 *L.Ed.*2d 432 (1983); *State v. Schrier,* 283 *N.W.*2d 338 (Iowa 1979) (clear plastic bag, which appeared to contain marijuana, protruding from knapsack); *Commonwealth v. Irwin,* 391 *Mass.* 765, 463 *N.E.*2d 1178 (1984) (marijuana seen through translucent "Tupperware" container). *Cf. United States v. Bonitz,* 826 *F.*2d 954 (10th Cir.1987) (closed, hard plastic case did not self-reveal presence of a weapon inside; therefore search invalid); *United States v. Rigales,* 630 *F.*2d 364 (5th Cir.1980) (gun discovered during search of ordinary briefcase, not a gun case, in absence of other circumstances, must be suppressed because contents of case could not be inferred from outward appearance). Searches of such containers, when accessible, are not constitutionally unreasonable because the objects, by their very nature, bespeak their contents and hence they retain no reasonable expectation of privacy.

■ A more difficult case is presented by warrantless seizures or searches of intrinsically innocent objects or containers when probable cause is based on the police officer's experience and training in associating such objects with criminal activity. We recognize that in some situations a police officer may have particular training or experience that would enable him to infer criminal activity in circumstances where an ordinary observer would not. *E.g., United States v. Green,* 670 *F.*2d 1148 (D.C. Cir.1981) (sequence of events between three persons on street corner, furtive movements of cupped hands, and flight, sufficient to support finding of probable cause by experienced narcotics investigator). In such situations, when an officer's experience and expertise is relevant to the probable cause determination, the officer must be able to explain sufficiently the basis of that opinion, so that it "can be understood by the average reasonably prudent person." W. LaFave, *Search and Seizure,* § 3.2(c) (1987).

For example, the police officer in *Texas v. Brown, supra,* 460 *U.S.* 730, 103 *S.Ct.* 1535, 75 *L.Ed.*2d 502, seized an uninflated, opaque party balloon that he saw on the front seat of the defendant's car. The Supreme Court, in sustaining the search, noted that such a balloon, innocuous in some situations, was so probative of a criminal purpose in the circumstances there that it furnished the police with probable cause to justify the warrantless seizure. The officer in *Brown* testified that, based on his experience, he was aware that narcotics frequently were packaged in such balloons. This testimony was later corroborated by a police department chemist. The officer explained that he had also seen in the car some small plastic vials, loose white powder, and additional balloons. Surely, in those circumstances the average person can well understand the reasons for the officer's conclusion.

In this case, the police discovered an object that appears intrinsically innocent. The object seized and searched was an opaque film canister, unaccompanied by a camera or other film accessory. Neither the configuration nor the design of such a container "proclaims its contents." Nor were the contents of the canister visible to the officer. If a finding of probable cause that its contents were criminal is to be sustained, then, it must be shown here that the officer's conclusion, when viewed in light of his special training or experience, would persuade the average reasonably prudent person that such a finding was justified.

We agree with the Appellate Division that the explanation for his opinion offered by the officer does not meet that standard. A mere assertion of the officer's belief is insufficient. *See Donaldson v. State,* 46 *Md.App.* 521, 420 *A.*2d 281 (1980) (officer's testimony that he was 100 percent sure film canister contained drugs not sufficient when no explanation of how his expertise led to that conclusion); *Sullivan v. State,* 626 *S.W.*2d 58, 60 (Tex.Crim.App.1981) (evidence insufficient to support finding of probable cause that pill bottle contained illegal drugs

when police officer did not establish specialized knowledge but said merely that "in my personal and professional opinion I thought it may possibly be some kind of narcotic"). Although courts take into account the "specialized experience and work-a-day knowledge" of police officers, *State v. Contursi*, 44 *N.J.* 422, 431, 209 *A.*2d 829 (1965), we have always emphasized that a police officer's search and seizure would be considered reasonable only if it conformed to "an objective standard of reasonableness." *State v. Reldan*, 100 *N.J.* 187, 202, 495 *A.*2d 76 (1985) (citing *State v. Bruzzese, supra*, 94 *N.J.* 210, 463 *A.*2d 320). Thus, the subjective beliefs of the officer, even if justified by his personal circumstances, are not dispositive. Rather, what is dispositive are the objective factors that would lead any officer with similar training and experience reasonably to conclude that drugs were in the canister. The experience that the officer detailed at the suppression hearing is not sufficient to warrant that conclusion with any objective probability.

In contrast, the officer in *Texas v. Brown* detailed his experience with similar narcotics containers and explained how the surrounding circumstances, including his observation of plastic vials, loose white powder, and other party balloons, led him to form a belief based on probable cause that the balloon contained drugs. 460 *U.S.* at 734, 103 *S.Ct.* at 1539, 75 *L.Ed.*2d at 508. Although the officer here said that half of his drug encounters involved the use of similar containers to hold narcotics, the record does not disclose the number of times he examined film canisters without result. Nor did the officer convey what other special expertise and training allowed him to conclude that there was a "fair probability" that narcotics would be found within the film canister. *See also Harris v. Commonwealth*, 241 *Va.* 146, 154, 400 *S.E.*2d 191, 196 (1991) (officer's knowledge from personal experience that some people keep narcotics in film canisters held to be at best a "hunch" and insufficient to demonstrate probable cause). In *State v. Odom*, 116 *N.J.* 65, 560 *A.*2d 1198 (1989), we permitted a police officer to testify as a narcotics expert about the defendant's intent to

distribute narcotics based on the quantity discovered. The opinion rendered by the expert there "was clearly founded on his experience and specialized knowledge" and its basis had been clearly conveyed to the jury. *Id.* at 79, 560 *A.*2d 1198. Had there been such proof here, it would justify the risk that an innocent owner might be subject to such a limited search—a risk all of us bear no matter what the justification for the search inasmuch as probable cause, not certainty, is the standard.

Obviously, as noted by the Appellate Division, were there other indicia of criminality, the probability would have been greater. *See United States v. White,* 655 *F.*2d 1302, 1304 (D.C.Cir.1981) ("high-crime" character of an area may be a relevant factor in determining probable cause); *State v. Colvin, supra,* 123 *N.J.* at 435, 587 *A.*2d 1278 (same); *State in the Interest of A.R.,* 216 *N.J.Super.* 280, 523 *A.*2d 678 (App.Div. 1987) (reliable informant's tip and possession of drugs by companions contributed to finding of probable cause). We would not always require other indicia of criminality to be present if the objects bespeak criminality to a trained observer. An example is when police observe students engaged in apparently innocent pursuits, but possessing beepers and using cellular telephones in a manner consistent with drug-related activity. The "average reasonably prudent person" would readily agree that youths do not ordinarily use those items to arrange after-school activities. *See also United States v. Hoyos,* 892 *F.*2d 1387, 1393 (9th Cir.1989) (experienced narcotics officers attribute "special significance" to the use of beepers and public telephones when employed by persons driving in a manner typical of counter-surveillance techniques), *cert. denied,* —— *U.S.* ——, 111 *S.Ct.* 80, 112 *L.Ed.*2d 52 (1990).

We recognize the difficulty faced by law-enforcement officers in making decisions such as the one here. Moreover, we do not mean to discourage investigation by police on suspicion of criminal activity. Had there been proof here, as in *Texas v. Brown, supra,* of regularized police experience that objects

such as the film canister are the probable containers of drugs, we would have a different case. But here the evidence was the experience of only one officer and even that evidence supplied no information about what percentage of observed containers held drugs.

To summarize, searches undertaken without a warrant must be justified under one of the recognized exceptions to the warrant requirement and a finding of probable cause in the sense of "a fair probability" must be shown to be warranted by the objective factors that would permit a comparably well-trained police officer to reach such a conclusion. That showing has not been made here.

The judgment of the Appellate Division is affirmed.

*For affirmance* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal* —None.