730 A.2d 447 (1999)
322 N.J. Super. 147
STATE of New Jersey, Plaintiff-Appellant,
v.
Rasheed MORRISON and Jerard Craig, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted June 2, 1999.
Decided June 17, 1999.
*448 Fred J. Theemling, Jr., Hudson County Prosecutor, for plaintiff-appellant (Salvatore E. Rozzi, Assistant Prosecutor, on the brief).
Dennis D.S. McAlevy, Union City, for defendant-respondent Rasheed Morrison (Susanne LaVelle, on the brief).
Francis S. Cutruzzula & Associates, Lyndhurst for defendant-respondent Jerard Craig, join in the brief of respondent Rasheed Morrison.
Before Judges PRESSLER, BROCHIN and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
Pursuant to leave granted, the State appeals an order granting the motion of defendants Rasheed Morrison and Jerard Craig to suppress.
The only witness to testify at the suppression hearing was Jersey City Patrolman John Peters. Peters testified that he had been assigned to the Lafayette Gardens housing complex for approximately eleven years. He was working that day in uniform with a partner, Patrolman Michael Krajewski. While he was on patrol in a police car he received a radio transmission from Lieutenant Teschlog requesting his presence on Ash Street. According to Peters, he stopped his vehicle in front of 46 Ash Street. As he and Krajewski exited the vehicle, two males immediately fled into the interior of the complex. He immediately recognized Morrison and Craig. Although he did not know Morrison's name at the time, he knew he had seen him as well as Craig in the complex many times previously. He had also received numerous complaints from management and other tenants regarding their sales of narcotics in the complex, which is in a very high narcotics area in which Peters had previously made numerous arrests.
Peters gave chase and observed both defendants run into the hallway of 46 Ash Street. Teschlog was ahead of Peters and apprehended Morrison. Teschlog told Peters that Craig had gone through a crawl space to the roof. By this time other officers had arrived and they lifted Krajewski into the crawl space to attempt to find Craig. As soon as Krajewski got into the crawl space he found a plastic bag filled with forty-nine vials of suspected cocaine. On cross-examination Peters conceded that he observed no illegal activity and was not advised by any other officer that they had observed illegal activity before participating in the chase.
On this appeal the State argues that the drugs were properly retrieved because the *449 facts objectively gave rise to a reasonable and articulable suspicion that defendants were engaged in criminal activity. We agree and reverse.
The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. Likewise, New Jersey's Constitution protects "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures". N.J. Const. art. 1, ¶ 7. Because of the strong preference for a warrant, a warrantless search is presumed to be illegal unless it falls within one of the recognized exceptions to the warrant requirement. State v. Citarella, 154 N.J. 272, 278, 712 A.2d 1096 (1998); State v. Demeter, 124 N.J. 374, 379-80, 590 A.2d 1179 (1991). One of those exceptions is the right of a police officer to conduct a brief, investigatory stop if he is able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. See Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968); State v. Citarella, supra, 154 N.J. at 278, 712 A.2d 1096; State In Interest of C.B., 315 N.J.Super. 567, 573, 719 A.2d 206 (App.Div.1998).
This appeal requires us to consider if and when defendants were subjected to an investigatory stop which implicated their constitutional rights and, if they were, whether the officers had a reasonably articulable suspicion justifying the stop. An investigatory stop occurs when the officers act in such a way that a reasonable person would believe that he or she is not free to leave. See State v. Citarella, supra, 154 N.J. at 280, 712 A.2d 1096. The United States Supreme Court has held that a police officer's chase, although it displays a show of authority, does not constitute a seizure under the Federal Constitution in the absence of the application of physical force, however slight, or a show of authority to which the suspect yields. California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690, 697 (1991). However, our Supreme Court has chosen to provide greater protection under the New Jersey Constitution and has held that for purposes of determining whether a seizure of the person has occurred, the court must consider the totality of the surrounding circumstances to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. See State v. Tucker, 136 N.J. 158, 165-66, 642 A.2d 401 (1994). Considering the totality of the circumstances, particularly the fact that as soon as defendants fled they were chased by four officers, we conclude that the chase would cause a reasonable person to believe that the police wanted to capture him and not just to speak with him. See id. at 166, 642 A.2d 401. We therefore conclude that a seizure or investigatory stop occurred.
We next consider whether the police had a reasonably articulable suspicion that defendants were engaged in illegal activity sufficient to justify the investigatory stop. The level of reasonable suspicion necessary to justify an investigatory stop is less than the probable cause standard needed to support an arrest. State v. Citarella, supra, 154 N.J. at 279, 712 A.2d 1096; State v. Arthur, 149 N.J. 1, 8, 691 A.2d 808 (1997). In measuring the reasonableness of the police conduct in conducting an investigatory stop, the need to search or seize must be balanced against the invasion which the search or seizure entails. State v. Arthur, supra, 149 N.J. at 7, 691 A.2d 808. "The facts used in that balancing test are to be judged objectively: `would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?' " Id. at 7-8, 691 A.2d 808. In determining whether the officers' actions *450 are reasonable, consideration must be given to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. Id. at 8, 691 A.2d 808. The motion judge concluded that the officer did not have a reasonably articulable suspicion that defendant was involved in criminal activity because he did not know why Teschlog had begun chasing defendants and did not see defendants involved in criminal activity. The judge considered State v. Doss, 254 N.J.Super. 122, 603 A.2d 102 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992), and observed that unlike Doss, supra, there was no indication that when the police car approached, someone called out "police" and at that point everyone fled. We disagree with that analysis.
We recognize that flight upon seeing a marked police car, without more, does not justify a seizure of the person fleeing. State v. Tucker, supra, 136 N.J. at 168-70, 642 A.2d 401. However, flight is a factor to consider with all the other surrounding circumstances to determine whether the officers had a reasonable and articulable suspicion that defendants were engaged in illegal activity. See State v. Citarella, supra, 154 N.J. at 281, 712 A.2d 1096; State In Interest of C.B., supra, 315 N.J.Super. at 575, 719 A.2d 206; State v. Doss, supra, 254 N.J.Super. at 130, 603 A.2d 102. Here, Peters had been called to the scene by his superior officer; he was aware of the fact that the area was a "very high narcotics area"; he had made numerous arrests in that area; he had received numerous complaints, which he was obliged to investigate, from management and other tenants in the complex regarding these particular defendants selling narcotics there; and defendants fled upon seeing the marked vehicle. The combined effect of those factors gave the officers a reasonable and articulable suspicion that criminal activity was occurring. They had the right, if not the obligation, to approach defendants, and upon their flight, to chase them in order to make a brief investigatory stop. See State v. Ruiz, 286 N.J.Super. 155, 163, 668 A.2d 460 (App.Div.1995), certif. denied, 143 N.J. 519, 673 A.2d 277 (1996) (police were justified in chasing defendant when he fled upon recognizing officer where it was late at night; location was a known drug trafficking area; defendant was walking near the center of the road and was known to police as a person who previously had connection with drug transactions and others engaging in such transactions; thus, items discarded by defendant during chase could be retrieved and used as evidence against defendant); State in Interest of J.B., 284 N.J.Super. 513, 518-20, 665 A.2d 1124 (App.Div.1995) (juvenile's flight upon police officer's approach to street corner during a planned sweep designed to eliminate loitering in high drug trafficking areas and in response to private citizen's complaint of drug trafficking at that corner justified officers following juvenile and upon finding him crouched on a porch also justified officer's lifting juvenile up for safety reasons; thus, drugs and a handgun found underneath the juvenile were properly seized); State v. Ramos, 282 N.J.Super. 19, 20-23, 659 A.2d 480 (App.Div.1995) (officer's observation of an apparent transfer by defendant of something to a person who had just given defendant currency in a high drug trafficking area coupled with defendant's flight after the officer exited his vehicle and asked defendant to approach him justified officer's chasing defendant and retrieving contraband discarded by defendant during chase); State v. Doss, supra, 254 N.J.Super. at 127-30, 603 A.2d 102 (police officer was justified in chasing defendant who was in a crowd of more than twenty people gathered in a parking lot, known as an area where drug trafficking was prevalent, at 11:30 p.m. on a cold, dark November night; someone in the crowd shouted a warning that the police were coming as soon as the vehicle was recognized as a police car; immediately thereafter defendant and three or four other persons broke away from the crowd and ran; officer yelled "police, stop" two *451 or three times, but defendant continued his flight; officer recognized defendant as someone he had seen in the area on previous occasions conversing with convicted drug dealers; thus, officer was justified in chasing defendant and arresting him for improper behavior, N.J.S.A. 2C:33-2(a)(2), or obstructing the administration of law, N.J.S.A. 2C:29-1(a), and evidence seized as a result of a search incidental to that arrest was admissible). The mere fact that none of the persons on the street, particularly those who fled, shouted "police" or words to that effect upon the arrival of the marked vehicle is of no real consequence. That merely means that one of the Doss factors was not present in analyzing the totality of the circumstances. That does not require a conclusion that the police lacked a reasonable and articulable suspicion that defendants were engaged in illegal activity.
We recognize that Peters did not testify as to a subjective belief that defendants were engaged in illegal activity. Moreover, he was unaware why Teschlog began to chase defendants. However, in determining whether a seizure is constitutional the proper inquiry is whether the conduct of the law enforcement officers in making an investigatory stop or detention is objectively reasonable. See State v. Bruzzese, 94 N.J. 210, 219, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). For the reasons already given, the officers acted in a manner that was objectively reasonable in chasing defendants, given the information known to them, when defendants fled at the sight of the police car. Accordingly, the drugs that were presumably abandoned and found in the crawl space were properly seized.
Reversed and remanded for further proceedings consistent with this opinion.